UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

AUSTIN TURNER, JR.,              )
                                 )
        Plaintiff,               )
                                 )        CIVIL ACTION NO.
        vs.                      )
                                 )        CV 95-AR-3186-M
WYN SOUTH MOLDED PRODUCTS,       )
INC.,                            )
                                 )
        Defendant.               )

**MEMORANDUM OPINION**

The court has before it a motion for summary judgment filed
by defendant, Wyn South Molded Products, Inc. ("Wyn South").
Plaintiff, Austin Turner, Jr. ("Turner"), alleges that Wyn South
violated Title VII of the Civil Rights Act of 1964, as amended,
and the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq.
("Title VII"), by terminating him from his position as a shift
leader and acquiescing in the creation of a hostile work
environment.  Because no genuine issues of material fact exist,
this court determines that summary disposition under Rule 56 is
appropriate.

## I. Pertinent Undisputed Facts

Turner is a thirty (30) year old black male with an eleventh
grade education.  He was employed by Wyn South as a painter
commencing on January 7, 1994, and received incremental pay

1

increases in March and April 1994.  On September 6, 1994, Turner was promoted to shift leader.  Thereafter, he received pay increases in early October and early November 1994.  He was terminated on November 23, 1994, for allegedly sexually harassing female employees at Wyn South.[1]

In October and November 1994, two women complained to supervisors about Turner's alleged sexual harassment of them. Pamela Bowden complained that Turner would not leave her alone, continually asked her out even after she responded with a "no," asked her about oral sex, rubbed up against her, called her "honey" and "baby" and told coworkers they were having sex.  In addition, on November 22, 1994, Dianne Green, a supervisor from another department, reported that she had seen Turner putting his hands on co-employee Shawna Gassaway's buttocks and pinching her.

In response to these complaints Wyn South conducted an investigation.  Jennifer Holder ("Holder"), Human Resources Coordinator, and Lewis Smith ("Lewis"), General Manager,

---

[1] Turner vehemently denies that he ever sexual harassed anyone at Wyn South.  In contrast, Wyn South has presented evidence that Turner did in fact sexually harass female employees.  This court must view all evidence in the light most favorable to the non-moving party.  Therefore, the court will proceed as if Turner did not sexually harass any employees at Wyn South. However, this does not mean that Wyn South did not have a good faith belief that Turner was engaging in sexual harassment of female employees so as to warrant an investigation and Turner's ultimate termination.

2

conducted the investigation.[2]  After completing the investigation
Holder and Lewis approached Turner about the allegations.  At
that time Turner did not deny the allegations, although he states
that he was unable to speak due to the fact that every time he
attempted to deny the said allegations he would be abruptly cut
off.  He has subsequently denied all of the charges that he
harassed female employees.  After meeting with Turner, Lewis
terminated him for the alleged sexual harassment of co-employees.
Both Lewis and Holder stated they hated losing Turner because
they thought he was a good worker.  In fact, Turner received a
raise and a complimentary report with regard to his work shortly
before he was terminated.

Prior to Turner's termination another employee at Wyn South,
Eddie Whitley ("Whitley"), a white male, was accused of sexual
harassment.  This occurred in June or July 1994, while Russell
Smith ("Russell") was General Manager.  Lewis took over for
Russell as General Manager in early November 1994.  Therefore,
Russell and Holder, from Human Resources, were in charge of the
investigation and for determining the appropriate remedial action
to take with regard to Whitley.  Whitley admitted some of the
allegations after which Russell and Holder warned him against any

---

[2]The general manger changed in early November 1994.  Lewis Smith took
over for Russell Smith.  Lewis then met with all employees and informed them
that he would not tolerate discrimination and/or harassment at Wyn South.

further discriminatory acts making it clear that harsher
discipline would result if he did not mend his ways..

In either June or July 1994, Turner had become the subject
of racial name-calling and epithets.[3] Between June 1994 and
September 1994 the following four comments were made to Turner:
(1) Whitley called him a "nigger"; (2) Brenda Wyngard ("Wyngard"
or "Winguard")[4] told him that "blacks are only good for
football"; (3) Whitley told him that "blacks were only good for
playing football and eating watermelon"; and (4) Whitley told him
that "you don't need a tan because you got one." Turner only
reported the first two incidents. He reported them to Shirley
Shirley, his "lead person." He also informed Russell Smith about
Wyngard's comment. Russell allegedly stated that "the word
'nigger' didn't mean nothing . . . [and that] I am sure that you
have got other words for white people such as 'honkey.'" (Turner
Depo. at 103). Subsequent to Turner reporting these two
incidents, Whitley was given a written warning and was provided
counseling. After this warning Whitley allegedly made comments

---

[3]It is not exactly clear to the court when exactly the racial slurs were
made to Turner. He stated in his deposition that he reported the racial slurs
of Whitley in July 1994. However, it appears that the comments were first
made in early June 1994.

[4]The parties spell Brenda's last name differently. Turner spells it as
"Winguard." (Turner Summary Judgment Brief at 8). Wyn South spells her name
as "Wyngard." (Wyn South Summary Judgment Brief at 21). The court does not
know which spelling is correct.

three and four above to Turner.  Turner did not report these
comments to anyone because he felt his job would be in jeopardy,
even though no one ever gave him any oral suggestion that he
should not report incidents.  (Turner Depo. at 109).  In
September 1994, Whitley was transferred to another department and
away from Turner by Gerald Alderson.  Turner stated that Whitley
was transferred because the two of them "stayed into it."
However, he did not report any racial comments made by Whitley
after he initially reported them in July 1994.[5]  Turner did not
have any contact with Whitley after the transfer and was not
subject to any more alleged racially discriminatory comments.

## II. Analysis

### A. Rule 56

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact
> and that the moving party is entitled to a judgment as a
> matter of law.

F. R. Civ. P. 56(c).  The obvious was stated by the Eleventh
Circuit as follows: "[s]ummary judgment is appropriate where
there exists no genuine issue of material fact and the movant is

---

[5]This court does not know how Wyn South found out about Whitley's
subsequent comments to Turner since he did not report them.  However, Wyn
South did find out and transferred Whitley in September 1994.

5

entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Wyn South has invoked Rule 56.

### B. Violation of Work Rules

Turner alleges that he was discriminated against by Wyn South because it treated a similarly situated white employee differently with regard to the alleged violation of the same work rule. Turner argues that Wyn South terminated him for allegedly sexually harassing a female co-employee while only warning Whitley, a white employee, for doing the same thing.

In cases involving alleged racial bias in the application of work rules, the prima facie case has been clearly delineated by the Eleventh Circuit. See Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). Plaintiff must establish that he is a member of a protected class and must show either "(a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside of the protected class, and that disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." Jones, 874 F.2d at 1540 (citing Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir.), cert. denied, 472 U.S. 1021, 105 S. Ct. 3489 (1985)). However, this prima facie case "only applies to Title VII cases in which a

6

plaintiff has not been terminated and therefore cannot show that he or she was replaced by a person outside the protected class." *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 n.4 (11th Cir. 1994). If a plaintiff has been terminated, as is the case here, he must proceed through the traditional Title VII prima facie burden shifting analysis and demonstrate that (1) he belongs to a protected class; (2) that he was qualified for the position he held; (3) that he was terminated; and (4) that either the position remained open or that someone outside the protected class filled the position. *See Cooper-Houston*, 37 F.3d at 605; *see also Dudley v. Wal-Mart Stores, Inc.*, 931 F. Supp. 773, 787 & n.6 (M.D. Ala. 1996).

Both parties agree that Turner was terminated, not replaced, and that his former position has not remained open. Therefore, Turner is unable to establish either brand of prima facie case. (Turner's Summary Judgment Brief at 3-4; Wyn South Summary Judgment Brief at 11-12, & n.8). However, Turner argues that to impose either of the aforementioned prima facie analysis to his situation is too harsh and contradicts the principles established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). This court disagrees. Moreover, even if this court believed that imposing the prima facie criteria to Turner was in fact here too harsh, this court is bound by the Eleventh

7

Circuit and therefore, must apply the law as determined by that court. Consequently, Turner is unable to establish his prima facie case, and the burden never shifts to Wyn South to demonstrate that it terminated Turner for a legitimate non-discriminatory reason. Turner's claim that his employer discriminated against him by treating a similarly situated white employee differently in violation of Title VII is due to be dismissed.

## C. Hostile Work Environment

Turner's second claim is that he was subjected to a hostile work environment at Wyn South. In order to prove a hostile work environment, the conduct at issue must have "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 2404-05 (1986). To establish a prima facie case of hostile work environment Turner must show that: (1) he belongs to a protected class; (2) he was subject to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) respondeat superior. *See Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507, *aff'd*, 58 F.3d 640 (11th Cir. 1995)(citing *Henson v. Dundee*, 682 F.2d 897, 903-05 (11th

8

Cir. 1982)).  Because Wyn South only argues that Turner fails to establish elements four and five of his prima facie case, this court will focus its analysis on elements four and five.

1. Term, Condition, or Privilege of Employment

To establish the fourth element of his prima facie case Turner must demonstrate that the harassment was sufficiently pervasive so as to alter the conditions of his employment and create an abusive environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993). This test is not subject to a mathematical equation or a bright line test. Thus, courts are to consider the following factors when making such a determination: (1) the frequency of the discriminatory conduct; (2) the severity of such conduct; (3) whether the conduct was physically threatening or humiliating; and (4) whether the conduct unreasonably interfered with the worker's performance. *Harris*, 510 U.S. at 20-22, 114 S. Ct. at 371. "[T]he mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not affect the terms, conditions, or privileges of employment to a sufficiently significant degree to violate Title VII." *Barber v. International Broth. of Biolermakers*, 778 F.2d 750, 761 (11th Cir. 1985)(quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).

9

Turner asserts that four racially discriminatory comments directed to him by co-employees over a three month period give rise to his hostile environment claim.  It is extremely difficult for this court to conjure up a scenario where four comments over an extended period of time would create a hostile work environment within the parameters established by *Meritor* and *Harris*.  There is no doubt that the comments Turner endured are offensive and humiliating.  In addition, the fact that Turner had to take time away from his work to complain indicates that such comments had a disruptive effect on his work.  However, the comments made to Turner were not so "commonplace, overt and denigrating that they created an atmosphere charged with racial hostility."  *E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990).

This court is prompted to say how grateful it is that it has been spared the opportunity to speak to the question of whether a white supervisor, who has been sent to a crash course in Ebonics, and who thereafter speaks perfect Ebonics to a black employee, is engaging in an act of discrimination and/or creating a hostile work environment.  Is the employer's motivation simply to improve communication or is it racist?  If this were the evidence in the instant case, a jury would have to provide the answer.  The legislative history will surely be sparse when this question

10

comes down the Title VII pipeline.

In the instant action, while it is clear that the alleged comments were offensive and humiliating, this court cannot hold that the frequency or severity of the comments created an atmosphere charged with racial hostility. *See McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996)(holding that three sexual comments over a three month period was not enough to create a hostile work environment).

## 2. Respondeat Superior

Even if this court were to agree with Turner that the terms, conditions, and privileges of employment were unreasonably affected by the discriminatory conduct, this court would still find that Turner has failed to establish his prima facie case of hostile work environment. To establish the fifth element of his prima facie case Turner must demonstrate that the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752 (11th Cir. 1996).[6]

Accordingly, this court now turns to a determination whether Wyn South knew or should have known about the alleged harassment and failed to take prompt remedial action. It is

---

[6]This is not a case in which an employee seeks to hold his employer directly liable for racial harassment by one who is acting as the employer. *See Kilgore*, 93 F.3d at 754, n.2.

11

undisputed that Wyn South actually knew about the incidents of alleged harassment.  Thus, the inquiry becomes whether it took prompt remedial action.  "The 'remedial action' must be reasonably likely to prevent misconduct from recurring." *Kilgore*, 93 F.3d at 754 (quoting *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir. 1990)).  This court finds that Wyn South did undertake prompt and appropriate remedial action in responding to Turner's allegations.

In the instant action Turner alleges that four racially discriminatory comments were made to him over a three month period.  Subsequent to the co-employees' first two comments, Turner complained to Shirley Shirley, his shift leader, and to Russell.  The alleged comments appear to have been made in early June 1994, and Turner lodged the complaint in early July 1994. In response to the allegations Wyn South immediately conducted an investigation and issued a written warning to Whitley for his alleged racial comment.  In addition, Whitley received counseling.

Between early July 1994, and September 1994, Whitley allegedly directed two more racially discriminatory comments at Turner.  While Turner did not file a second complaint against Whitley, allegedly because he believed his job would be in jeopardy if he did so, Wyn South nevertheless became aware of the

12

ongoing problem, and on September 17, 1994, it transferred

Whitley to another department away from Turner, effective

September 19, 1994. Since the transfer, there has been no

contact between Turner and Whitley, and Turner has not been

subjected to any more allegedly racial comments. *See Saxton v.*

*AT&T*, 10 F.3d 526, 535 (7th Cir. 1993) (holding that a transfer

is an effective remedial tool). As a result, Wyn South has taken

steps that not only were reasonably likely to prevent the conduct

from reoccurring, but that in fact did completely eradicate the

problem faced by Turner.

Finally, Turner asserts that his action is similar to *EEOC*

*v. Beverage Canners, Inc.*, 897 F.2d 1067 (11th Cir. 1990),

wherein plaintiff's employer subjected him to a hostile work

environment. However, *Beverage Canners* is inapposite. In

*Beverage Canners* the employer did not undertake any remedial

actions with regard to the alleged hostile work environment.

Instead, the employer tried to argue that it was blind to the

steady barrage of denigrating racial comments made by the plant

manager and co-workers to its black employees. Here, Wyn South

on its own accord discovered the ongoing problem and provided

remedial action. After which Turner was no longer the target of

any racial slurs or epithets. Accordingly, this court finds that

Turner has failed to meet the fifth element of his prima facie

13

case and his hostile work environment claim is due to be denied.

### III. Conclusion

The evidence and arguments submitted by the parties do not
establish that any genuine issue of material fact exists with
regard to Turner's claims.  Because no genuine issue of material
fact exists and because this court determines that Wyn South is
entitled to a judgment as a matter of law, Wyn South's Rule 56
motion is due to be granted.  A separate and appropriate order
will be so entered.

DONE this 27th day of January, 1997.


_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT

14